(C. D. 1181)

J. F. CABALLERO *v.* UNITED STATES

United States Customs Court, Third Division

(Decided July 11, 1949)

*Lawrence, Tuttle & Harper* (*George R. Tuttle* and *Charles J. Evans* of counsel) for the plaintiff.

*David N. Edelstein,* Assistant Attorney General (*William J. Vitale* and *John J. McDermott,* special attorneys), for the defendant.

Before CLINE, EKWALL, and JOHNSON, Judges

EKWALL, Judge: Importations of crushed pineapples in tins were made at the port of Los Angeles, Calif., and were covered by two entries dated April 1, 1944, and May 4, 1944. A total of 1,280 cases was

involved, each case containing two 5-gallon cans. The collector of customs assessed regular duty thereon at the rate of 1 cent a pound under the provisions of paragraph 747 of the Tariff Act of 1930 .(19 U. S. C. 1934 ed. sec. 1001, par. 747), as modified by the Mexican Trade Agreement reported in T. D. 50797. In addition to the regular duty, there was assessed a tax of 0.5144 cent per pound on the total sugars under section 3500 of the Internal Revenue Code, which covers "all articles composed in chief value of manufactured sugar."

In a letter from the Bureau of Customs to the collector at New York, reported in T. D. 49299, the following construction was placed on descriptive terms used in said section 3500:

(1) *Sugar Act of 1937.*—The words "articles composed in chief value of manufactured sugar," as used in section 403 (a) (3) of the Sugar Act of 1937, published in T. D. 49160, are construed to refer to articles in which manufactured sugar, as defined in section 401 of the act, is the component material which exceeds in value any other single component material of the article. Bureau letter to collector of customs, New York, N. Y., November 24, 1937.

As to the method to be used in determining the component material of chief value, our appellate court in *United States* v. *Rice-Stix Dry Goods Co.*, 19 C. C. P. A. 232, T. D. 45337, held as follows:

This court has repeatedly held that the proper method of determining component material of chief value is to ascertain the costs of the separate parts or component materials to the manufacturer at the time they are ready to be assembled or combined into the completed article. *United States* v. *Mrs. S. Bacharach,* 18 C. C. P. A. (Customs) 353, T. D. 44612; * * *.

In support of his claim plaintiff offered and there was received in evidence a commission executed in Mexico City consisting of the testimony of Roberto A. Morales, manufacturer of the merchandise before us (collective exhibit 1), and also a "corrected affidavit" as to the cost of the sugar content and of the crushed pineapple which made up the imported commodity. The latter document was marked exhibit 6 for identification. The Government offered the sugar certificates attached to the two invoices involved, in which the respective costs of the manufactured sugar and the pineapple are set forth, in compliance with section 8.13 of the Customs Regulations of 1943 and T. D. 49867, which require additional data to accompany invoices of commodities containing 10 per centum or more by weight of manufactured sugar. These certificates state the quantity, first cost, additional cost, and total cost of the refined sugar and of the crushed pineapple contained in the importation. They are signed by Roberto A. Morales, the manufacturer of the merchandise and the same person whose sworn testimony in deposition form is included in collective exhibit 1. The certificates were received and marked exhibits 4 and 5. Government counsel also introduced into evidence the chemist's

reports of analyses of samples of the merchandise in suit (exhibits 2 and 3) showing the percentages of cane or beet sugar in the samples.

The certificates (exhibits 4 and 5) are part of the official files and properly admissible for the purpose of showing compliance with the regulations. Exhibit 6 for identification, being an affidavit, was excluded by the judge hearing the case. The evidence shows that it was not transmitted to the court with the official papers but was produced by the plaintiff from the files of the customhouse at the time of the hearing. It is too well-known to need citation of authorities that affidavits are inadmissible in protest cases. The only purpose any of these certificates could serve insofar as this court is concerned is to show compliance with the regulations. They are not admissible as proof of the statements therein contained. It is noted that the collector did not change his original assessment upon receipt of the corrected certificate (exhibit 6 for identification), although this was received by him at the time of filing of the protest.

It has been held on numerous occasions that affidavits filed in compliance with regulations are not proof on the merits, their function being to assist the collector in deciding upon the dutiable status of the imported merchandise on entry. See *Hull* v. *United States,* 10 Ct. Cust. Appls. 211, T. D. 38556.

Counsel for the plaintiff in the brief filed contends that the corrected affidavit (exhibit 6 for identification) establishes that the crushed pineapple content of the imported article is the component of chief value and that said imported product is not "an article composed in chief value of manufactured sugar." This affidavit further states that an "involuntary error" was made by the customs brokers who prepared the required documents in connection with the two shipments involved in that the value of the pineapples in every cooking batch was stated to be a total of $30 instead of $50, and the first cost of 50 kilos of sugar is Mex. $34 and the first cost of 50 kilos of crushed pineapple is Mex. $55. Inasmuch as we hold that this affidavit has no evidentiary value, we find no merit in this contention. It is noted, however, that the original certificates which it is alleged the customs brokers prepared (exhibits 4 and 5) are signed by the manufacturer and shipper.

On this state of the record we must look to the testimony of the manufacturer and shipper produced under the commission (collective exhibit 1) for proof of the component material of chief value in this case. To certain of the answers therein contained Government counsel made objections. The first of these is directed against the answer to interrogatory No. 11, which interrogatory reads:

What did you pay for the pineapple that you used to pack these 1280 cases shipped to Los Angeles; how many kilos did you buy, and for how much?

The answer is as follows:

In 1943 I had partners who retired from the business, I have bought their shares. The 1280 boxes under reference were then packed. The partners kept the account books which would show what the costs were exactly. Some time ago I sent to Lawrence, Tuttle & Harper an exact statement of costs based upon the accounting records which was certified by the American Consulate. However, I have the impression that in 1943 we paid between 80 and 100 pesos per ton for fresh pineapple. The yield is between 28 and 33% approximately of pulp. If the average was 30% with an average of 90 pesos per ton of fruit, the ton of pulp would be 300 pesos.

Government counsel's objection is that the above answer is not responsive to the question and is not connected with the merchandise at bar. We think the answer is objectionable as being too vague in that it states "the impression" of the witness, and that it is entitled to little weight for that reason. In the brief filed on behalf of the plaintiff we find the following statement:

* * * This "exact statement of costs" is contained in the corrected affidavit marked as plaintiff's exhibit 6 for identification, and constitutes a definite answer to question 11.

As set forth above the affidavit is of no probative value in this court except for the purpose of showing compliance with the regulations.

Defendant's counsel also moved to strike out the answer to interrogatory No. 12 which gives the costs involved in preparing the pineapple up to the time the sugar was added. The motion is denied but in view of the concessions made in plaintiff's brief that these costs are stated to be approximate only and that they are apparently stated from recollection, we find them of little probative force and far from sufficient to enable the court to determine the first cost of the pineapples here involved.

Government counsel also moved to strike out the answer to interrogatory No. 14, which reads:

What additional costs were there in handling the sugar up to the time it was added to the pineapple?

In answering this the cost of "unloading at the railroad station and factory" is given as "twenty sacks per ton at ten centavos per sack, 2 pesos." The remainder of the answer consists of approximate costs or computations and conclusions on the part of the witness. The motion to strike out all after the first sentence of this answer is therefore granted.

The chemist's reports of analysis of samples of the merchandise in suit (exhibits 2 and 3) showing the percentages of cane or beet sugar contained in the samples are of no value in determining the costs of the components of the merchandise.

Upon the record as made we find that the plaintiff has failed to sustain his burden of proof. The protest is therefore overruled.